# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |
|---|---|
| JAHLYNN HANCOCK, *on behalf of herself and all other similarly situated persons, known and unknown,*<br>Plaintiffs<br><br>v.<br><br>AH-HA CHOCOLATES, FUDGE & ICE CREAM CORP., *et al.*,<br>Defendants | No. 22 CV 00623<br><br>Judge Jeremy C. Daniel |

## MEMORANDUM OPINION AND ORDER

This case is before the Court on Plaintiff Jahlynn Hancock motions for class action certification under Rule 23 (R. 143) and collective action certification (R. 145). The plaintiffs allege that Defendants Jacqueline Jackson, Ah-Ha Chocolates, Fudge & Ice Cream Corp. ("Ah-Ha"), Chocolate Girl Explosion ("Explosion"), and Highly Favored Confections ("Highly Favored") (collectively, the "defendants") employed unlawful policies and practices that withheld tips, forced off-the-clock work, and denied earned overtime to the plaintiffs. (*Id.*) Hancock, individually and on behalf of all others similarly situated, brings claims against the defendants as a putative class action for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* (Counts III and V), the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1, *et seq.* (Count X), the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1, *et seq.* (Counts XII and XIV), and the Chicago Minimum Wage Ordinance ("CMWO"), Chicago Mun. Code, § 6-105-010, *et seq.* (Count XVII); and individually

for violations of the FLSA (Counts IV, VI, VII, and VIII), IMWL (Count XI), and IWPCA (Counts XIII and XV) Additionally, Counts I and II for violations of the FLSA were previously dismissed (R.117.) The plaintiffs now move for class certification pursuant to Fed. R. Civ. P. 23, and for collective action certification pursuant to 29 U.S.C. § 216(b). For the reasons set forth below, the plaintiffs' motions for certification are granted.

## BACKGROUND

Jackson owns and operates Ah-Ha, Explosion, and Highly Favored as franchise locations of Kilwins, an ice cream and confectionary business, in Chicago, Illinois. (R. 118 ¶¶ 18–26.)[1] Across these locations, Jackson implemented identical workplace policies and procedures and maintained authority over employment decisions for employees. (*Id.* ¶¶ 40–41.) In September 2020, the defendants hired Hancock as an hourly employee to work across locations as a Kilwins team member, and she continued to do so until the defendants terminated her employment in July 2021. (*Id.* ¶¶ 42, 127.)

During her employment, Hancock claims that the defendants maintained an unlawful tip policy that solicited tips from customers but withheld their disbursement to employees. (*Id.* ¶¶ 55–62.) Hancock alleges that employees never received their cash tips and only received partial distributions of credit tips after Jackson withheld portions based on alleged improper cellphone usage, "capping" of tips, and a promise of tip pooling. (*Id.* ¶¶ 62–68.) Hancock also asserts that the defendants implemented

---

[1] For ECF filings, the Court cites to the page number(s) in the document's ECF header unless citing to a particular paragraph or other page designation is more appropriate.

an unlawful practice of deducting hours worked from employees' paychecks. (*Id.* ¶¶ 83–104.) Hancock alleges that improper deductions occurred through a practice to deduct mandatory unpaid hour break periods from employee paychecks, irrespective of whether the break was taken in part, in full, or at all. (*Id.* ¶¶ 83–89.) Hancock further alleges that the defendants executed improper deductions by requiring employees to continue work duties while on their mandatory break period, performing off-the-clock work before and after clocking in for a shift, and by deducting pay for cell phone usage regardless of its professional purpose. (*Id.* ¶¶ 90–104.) Finally, as a result of the foregoing practices, Hancock claims that the defendants failed to pay employees for earned overtime at a rate of one-and-one-half their hourly wage. (*Id.* ¶¶ 109–11.)

## LEGAL STANDARD

A party seeking to certify a class must show by a preponderance of the evidence that the putative class satisfies the four prerequisites of Federal Rule of Civil Procedure ("Rule") 23(a): numerosity, commonality, typicality, and adequacy. *See* Fed. R. Civ. P. 23(a); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011). A plaintiff must also demonstrate that the proposed class meets one of the three requirements established in Rule 23(b). *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1059 (7th Cir. 2016). Only Rule 23(b)(3) is relevant to the present case. (R. 143 at 12–14; R. 158 at 9–10.) To certify a class pursuant to Rule 23(b)(3), a plaintiff must show that "the questions of law and fact common to class members predominate over questions affecting only individual members" and that the "class action is superior to

other available methods of fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

As a distinct matter, a plaintiff may also bring an action under Section 216(b) of the FLSA, which provides private employees the right to bring certain FLSA claims in a "collective action" on behalf of themselves and other "similarly situated" employees. 29 U.S.C. § 216(b); *Dennis v. Greatland Home Health Servs., Inc.*, 498 F. Supp. 3d 898, 899 (N.D. Ill. 2020). A collective action, while not required, often proceeds through a two-step process. At step one, the court determines whether to issue notice to a proposed collective, requiring plaintiffs to make a threshold evidentiary showing that "there is a material factual dispute as to whether the proposed collective is similarly situated" *Richards v. Eli Lilly & Co.*, 149 F.4th 901, 913 (7th Cir. 2025). That is, "a plaintiff must produce some evidence suggesting that they and the members of the proposed collective are victims of a common unlawful employment practice or policy." *Id.* At step two, the court engages in a more stringent analysis of three factors: (1) whether the putative plaintiffs share similar or disparate employment settings; (2) whether affirmative defenses raised by the defendant would have to be individually applied to each plaintiff; and (3) any fairness or procedural concerns. *Mielke v. Laidlaw Transit, Inc.*, 313 F. Supp. 2d 759, 762 (N.D. Ill. 2004). This step is likewise governed by a preponderance of the evidence standard. *Richards*, 149 F.4th at 912.

Alternatively, despite some significant differences between a class action and a collective action, the Seventh Circuit allows them to be treated as a single combined action and analyzed under the same framework using the more stringent requirements of Rule 23 certification. *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 771–72 (7th Cir. 2013) (finding that despite FLSA collective actions requiring unnamed plaintiffs to opt-in and Rule 23 class actions requiring unnamed plaintiffs to opt out, the Seventh Circuit uses the same analysis framework); *Ervin v. OS Rest. Servs., Inc.*, 632 F.3d 971, 974 (7th Cir. 2011) (ruling that there is no insurmountable tension between the FLSA and Rule 23 and combining them to be determined under Rule 23 analysis is proper).

## ANALYSIS

### I. RULE 23 CLASS CERTIFICATION

#### A. Numerosity

To satisfy the numerosity requirement, the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P 23(a)(1). While there is no "magic number" of plaintiffs that makes a class so numerous that joinder is impracticable, the Seventh Circuit has held that "a forty-member class is often regarded as sufficient." *Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 859 (7th Cir. 2017). Plaintiffs are not required to specify the exact number of persons in the class so long as "a conclusion is apparent from good-faith estimates." *Barragan v. Evanger's Dog & Cat Food Co., Inc.*, 259 F.R.D. 330, 333 (N.D. Ill. 2009). Here, the plaintiffs have identified at least 123 individuals who were employees at the defendants' three relevant Kilwins Chicago locations. (R. 143 at 12–13; R. 145 at 253–

62.) The defendants offer no argument disputing that assertion or otherwise challenging the numerosity of the class. Because joinder of 123 plaintiffs would be impracticable, the Court finds that the numerosity requirement has been met.

### B.   Commonality

The commonality requirement requires that the class claims involve "questions of law or fact that are common to the class." Fed. R. Civ. P. 23(a)(2). A class may have more, but a single common question is enough to satisfy the commonality requirement. *Dukes*, 564 U.S. at 376. A question is common where it is born from the same injury suffered by the class members, the class claims "depend on a common contention," and it generates a common answer that will "resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 349–50; *see also Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 374 (7th Cir. 2015).

Here, the plaintiffs raise four common questions that yield common answers. The first is whether the "defendants maintain[ed] an unlawful tip pool in violation of IMWL and IWPCA by appropriating tips for non-employee purposes[.]" (R. 143 at 13.) Both federal and Illinois law prohibit employers from keeping tips or gratuities owed to employees. 29 U.S.C. § 203(m)(2)(B); 29 C.F.R. § 531.50; 820 ILCS 115/4.1. As such, the question of whether the defendants used collected tips for purposes other than complete dispersal to employees is one that will have a common answer and is capable of class wide resolution. The second is whether "[the] defendants systematically require[d] off-the-clock work through automatic meal break deductions and manual timekeeping adjustments[.]" (R. 143 at 13.) The closely related third question is whether "[the] defendants [made] unlawful deductions from employees' wages[.]" (*Id.*)

At the center of each of these questions is a probe into whether the defendants enforced unofficial policies in parallel to their official ones across the defendants' three Chicago locations. As posed, both questions are capable of common answers that would provide class wide resolution to their respective claims. The plaintiffs' final question is whether "[the] defendants fail[ed] to pay overtime premiums for hours over 40[.]" (*Id.*) This issue is relevant because the FLSA and IMWL require employers to pay employees at a rate of at least one-and-one-half-times their normal hourly rate for a work week longer than forty hours. 29 U.S.C. § 207(a)(1); 820 ILCS 105/3(c)–(d). If the defendants have properly paid overtime, the plaintiffs have no claim on this issue. If the defendants have not made proper overtime payments, then they have violated the law and further adjudication is required. In either event, the question is common to the class, and an answer would lead towards class wide resolution.

The defendants argue that the plaintiffs cannot satisfy the commonality requirement with these questions because the defendants have official policies that govern each of the issues raised and so deny the related allegations. (R. 158 at 6–7.) They rely on *Stafford v. Bojangles*, 123 F.4th 671, 680 (4th Cir. 2024), which held that "federal courts do not accept, as proof of a common policy, allegations that employers routinely violated their own policies." (*Id.* at 7.) The Court finds the defendants' reliance on *Stafford* to be misplaced. The Fourth Circuit in *Stafford* rejected commonality where it found a class of over 3,000 members across two states and under numerous managers to be held together by a "vague and overly general" theory

7

that Bojangles had an unofficial policy to violate its own lawful policy concerning off-the-clock work. *Stafford*, 123 F.4th at 678, 680. In the present case, the record shows a class of 123 members across three franchise locations in Chicago, each centrally managed and governed by company policy enforced through the owner, Jackson. The plaintiffs assert that the orders to provide off-the-clock work, though varied, consistently came from an in-person directive or phone call from Jackson. (R. 145 at 65 ¶¶ 47–51; *Id.* at 70 ¶¶ 10–11; *Id.* at 89 ¶ 12.) These circumstances are distinguishably narrower and more concrete than those in *Stafford.*

The Seventh Circuit has been clear that at this stage, "the court should not turn the class certification proceedings into a dress rehearsal for the trial on the merits." *Bell*, 800 F.3d at 376. The plaintiffs need only show that one common issue exists amongst all class members. The Court finds that the plaintiffs have met that burden. Therefore, the commonality requirement has been satisfied.

### C.     Typicality

Typicality requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). To begin, the Court must focus on "whether the named representatives' claims have the same essential characteristics as the claims of the class at large.*" Retired Chi. Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993). A claim is typical if it "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and if [their] claims are based on the same legal theory." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992).

8

The Court finds that Hancock's claims are typical of the class, because her claims arise from the same alleged conduct of the defendants, including: the alleged withholding of collected tips, failure to pay earned overtime, and unlawful wage deduction practices. (R. 145 at 17–18.) Further, Hancock relies on the same legal theories as the class, namely, alleged violations of the FLSA, IMWL, and IWPCA. The defendants make no arguments against the typicality of Hancock's claims but instead invite the Court to consider their adequacy argument against Hancock for both the analysis of typicality and adequacy. The Court declines to do so, as these are distinct requirements that get at different class issues. Thus, the Court finds the typicality requirement to be met.

### D. Adequacy

To satisfy the adequacy requirement, the plaintiffs must show that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The "adequacy inquiry consists of two parts: (1) the adequacy of the named plaintiffs as representatives of the proposed class's myriad members, with their differing and separate interests, and (2) the adequacy of the proposed class counsel." *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011). The defendants raise no argument against the adequacy of the plaintiffs' class counsel, and the Court is not aware of any reason to question counsel's experience and ability to conduct the litigation on behalf of the class.

The defendants do, however, contest the adequacy of Hancock to serve as class representative, under the theory that she is subject to an individualized arguable defense that is not applicable to the class as a whole. (R. 158 at 8–9.) The defendants

9

argue that Hancock was not an employee of Highly Favored and therefore could not have had uncompensated time related to that defendant, resulting in her claims failing where the claims of other class members may not. (*Id.*) While true, the Seventh Circuit has been clear that not any arguable defense peculiar to the class representative will do; the individual defense must be "substantial' to defeat adequacy. *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1027 (7th Cir. 2018). The Court is not persuaded here that the defense is substantial. First, through the defendants' admissions, the defendants' published "WhenToWork" schedules, and the class representative's testimony plausibly shows that Hancock did perform work at Highly Favored's location during the class period. (R. 159 at 8.) Second, even if Hancock had not worked as an employee at Highly Favored, she still operated as an employee under Jackson, the undisputed owner of each of the three Kilwins Chicago locations at issue. The record supports the plaintiffs' contention that each location operated under centralized policies relating to tips and payment practices. (R. 145 at 364; R. 159 at 8.) Given that the shared focus of the plaintiffs' claims center on the defendants' centralized policies, no substantial conflicting claims exist. The adequacy requirement has been met.

### E. Predominance

Under Rule 23(b)(3), the plaintiffs must demonstrate "that questions of law or fact common to the members of the class predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "The predominance requirement is similar to the commonality and typicality requirements, but far more demanding." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623–24 (1997). "The guiding principle

behind predominance is whether the proposed class's claims arise from a common nucleus of operative facts and issues.*" Santiago v. City of Chicago*, 19 F.4th 1010, 1016 (7th Cir. 2021). The Seventh Circuit has held that the predominance requirement "is satisfied 'when common questions represent a significant aspect of [a] case and . . . can be resolved for all members of [a] class in a single adjudication.'" *Messner v. Northshore Univ. HealthSys.*, 669 F.3d 802, 815 (7th Cir. 2012) (quoting 7AA Wright & Miller, Federal Practice & Procedure § 1778 (3d ed. 2011)). "A common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof." *Arandell Corp. v. Xcel Energy Inc.*, 149 F.4th 883, 892 (7th Cir. 2025). An individual question, on the other hand, is one where "the members of a proposed class will need to present evidence that varies from member to member." *Id.*

Here, the defendants argue that the predominance requirement cannot be met because the liability determinations of the plaintiffs' class claims would "devolve into individualized, fact-laden inquiries that would wholly defeat any benefits of class certification," particularly as it relates to the class' claims around "off-the-clock work and manual deductions." (R. 158 at 9–10.) Yet, they provide no support for this argument. In any event, the Court disagrees. For largely the same reasons the Court found the plaintiffs class claims satisfied the commonality and typicality requirements, it likewise finds in favor of predominance. Each of the class's claims arise under a review of the same alleged wage and tip practices during the same period and were administered by the same defendants. As it relates to liability, these

11

issues are broadly capable of class resolution through the presentment of common proof. While the Court accepts that individual liability questions may arise, they are not so numerous as to predominate over the existing common questions. *See Kernats v. Comcast Corp.*, No. 09 C 3368, 2010 WL 4193219 at *7–8 (N.D. Ill. Oct. 10, 2010) (holding that common proof of an unofficial policy to deny overtime or compensation for time worked is sufficient to predominate over the individualized methods applied to achieve the alleged policy); *see also Kramer v. American Bank and Trust Company, N.A.*, No. 11 C 8758, 2017 WL 1196965 at *8–9 (N.D. Ill. Mar. 31, 2017) (finding that defendants may not rely on a failure to maintain proper records to shield against certification through arguments that plaintiffs cannot collectively establish the precise extent of uncompensated work). Further, to the extent that individualized inquiries are necessary, they will largely be to determine the extent of a class member's individual damages. The Seventh Circuit has been clear that such a need in and of itself is not sufficient to deny the predominance of a class's claims. *Arreola v. Godinez*, 546 F.3d 788, 801 (7th Cir. 2008); *Messner*, 669 F.3d at 815. As such, it is the common issues of wage and tip practices and whether they violate the relevant parts of the FLSA, IMWL, and IWMPCA that will be the focus. *Starr v. Chicago Cut Steakhouse, LLC*, 75 F. Supp. 3d 859, 874–75 (N.D. Ill. 2014). Therefore, the Court finds that the plaintiffs have satisfied the predominance requirement.

### F. Superiority

The second requirement for class certification under Rule 23(b)(3) is "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This requirement is satisfied

12

if "a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 624. The plaintiffs have alleged that a potential class of more than 100 members has suffered under the defendants' centralized wage and tip practices in violation of the FLSA, IMWL, and IWPCA. Under these conditions, resolving individualized suits that would rely on evidence common to each member's claims would be an inefficient use of both judicial and party resources. *See Barragan*, 259 F.R.D. at 334–35 (determining that because of "its benefits of consistency and efficiency," a class action was the superior method of resolving IMWL claims).

The defendants' arguments regarding superiority are indistinguishable from their arguments with respect to commonality, typicality, and predominance. (R. 158 at 10–11.) The Court has already explained its assessments of these assertions and declines to repeat that analysis. Therefore, the Court finds that a class action is superior to other available methods for the resolution of the plaintiffs' claims. The superiority requirement has been met.

The Court finds that the plaintiffs have satisfied the four required elements of Rule 23(a) and the requirements of Rule 23(b)(3).

## II.     COLLECTIVE ACTION

For the purposes of determining certification of a collective action and a class action in a single suit, the Court elects to apply the more rigorous Rule 23 standard to both types of cases. *See Espenscheid*, 705 F.3d at 772. Because the plaintiffs have met the standards for class certification under Rule 23, they have also necessarily

13

met the lower bar required for FLSA collective certification. Certification of the collective action under 29 U.S.C. § 216(b) is therefore appropriate.

For the foregoing reasons, the plaintiffs' motions for class certification and final collective action certification are granted, respectively. The class shall proceed as:

> All persons who have been employed as hourly employees by Defendants Ah-Ha Chocolates, Fudge & Ice Cream Corp., Chocolate Girl Explosion, Inc., Highly Favored Confections, Inc., and/or Jacqueline Jackson at Kilwins Chicago – Hyde Park, Kilwins Chicago – 310 S. Michigan Avenue, and/or Kilwins Chicago – Navy Pier, at any time between February 4, 2019 and the conclusion of this action.

**CONCLUSION**

The plaintiffs' motion for Rule 23 class certification [143] is granted. The plaintiffs' motion for collective action certification [145] is granted.

Date: <u>July 31, 2026</u>

JEREMY C. DANIEL
United States District Judge

14